## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     *Plaintiff*,

     v.                              **Civ. No.**

**2021 CHEVROLET CORVETTE STINGRAY**
**VIN: 1G1YC2D49M5101963**,

     *Defendant-in-rem.*

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action to forfeit and condemn to the use and benefit of the United States of America a conveyance used or intended for use in transporting or facilitating the transportation, sale, receipt, possession, or concealment of a controlled substance or listed chemical in violation of the Controlled Substances Act; a thing of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act; proceeds traceable to an exchange of moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of the Controlled Substances Act; and/or property involved in money laundering or property traceable to such property.  The Defendant-in-rem is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(4) and 881(a)(6), 18 U.S.C. §§ 1956 and 1957, and 18 U.S.C. § 981(a)(1)(A).

## DEFENDANT *IN REM*

2.      The Defendant *in rem* consists of the following:

2021 CHEVROLET CORVETTE STINGRAY BEARING VEHICLE IDENTIFICATION NUMBER

(VIN): 1G1YC2D49M5101963 (hereinafter referred to as "Defendant Property").

3.      The Defendant Property was seized by the U.S. Drug Enforcement

Administration (DEA) on or about December 8, 2023, in the District of New Mexico.

4.      The Defendant Property is now, and during the pendency of this action will be, in

the jurisdiction of this Court.

## JURISDICTION AND VENUE

5.      The United States District Court for the District of New Mexico has subject

matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6.      Venue for this civil forfeiture action is proper in this district pursuant to 28

U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this

district and the property is found in this district.  Upon the filing of this complaint, the

Defendant Property will be arrested by execution of a Warrant for Arrest *In Rem* in the District

of New Mexico.

## FACTS

7.      Since 2019, DEA has been investigating members of a local Albuquerque gang

identified as the "Get Hard Crew" (GHC), for drug trafficking and other violent crimes.  Several

of the members of this gang have been arrested and others continue to carry about criminal acts

in furtherance of the gang.

8.      DEA identified Jose Romero (hereinafter "Romero"), with the alias of "Risk," as

a member of the GHC gang.  DEA has identified Romero as a significant fentanyl trafficker.  In

2021, DEA Agents conducted several surveillance operations on other GHC members during

which Romero was present.  Romero was observed by Agents conducting hand-to-hand drug transactions during these surveillance operations.

9.      Prior to his arrest in September 2023,  Romero was subject to a felony warrant for possession of a controlled substance.

10.     In late September 2023, APD contacted DEA Agents regarding Romero.  APD informed DEA Agents that Romero was wanted as a suspect in a homicide that occurred on September 6, 2023.  APD Detectives explained that this homicide appeared to begin as a gang feud between current GHC members, including Romero, and former GHC members.  The altercation that led to the homicide occurred inside of Isotopes stadium between Romero, another GHC member identified as Nathen Garley, and Isaiah Vasquez, a former GHC member.

11.     Surveillance footage from cameras near the Isotopes stadium shows Romero and other GHC members following Isaiah Vasquez away from the stadium prior to the homicide. After leaving the stadium, Romero and the other GHC gang members observed Isaiah Vasquez enter a white Dodge pickup truck and depart the area of Isotopes baseball park.  At this time, Romero and other GHC gang members, including Nathen Garley, entered a dark colored Dodge Durango and began to follow a white Dodge truck that pulled out and left a parking lot near the Isotopes baseball park.

12.     Romero, who was the driver of the Dodge Durango, and other GHC members then conducted a drive-by shooting targeting the white Dodge truck they followed from the area of the Isotopes baseball park.  The shooting occurred near the address of 1155 Avenida Cesar Chavez, Albuquerque, New Mexico.  Available surveillance footage showed that the dark colored Dodge Durango fled the scene following the shooting.

13.     When Officers arrived on scene of the shooting, they encountered one deceased individual and another person who was gravely injured.  Neither of these individuals were

identified as Isaiah Vasquez, who was the intended target for this drive-by shooting.  Prior to the

shooting, Isaiah Vasquez had gotten into a truck similar to the truck that was ultimately shot at

by Romero and the GHC members.  On information and belief, Romero and the GHC members

incorrectly targeted a vehicle they believed to contain Isaiah Vazquez.  Based on information

discovered in a law enforcement investigation of the shooting, state felony warrants for Romero

and Nathan Garley's arrest.

14.     The law enforcement investigation discovered evidence that Romero was the

owner of the dark colored Dodge Durango and that he shot at the white Dodge truck on the date

of the shooting.  The investigation also revealed evidence that Romero owned a car business

identified as "Conture_Customs."  Using this information, Detectives were able to identify a

phone number belonging to Romero and were able to locate him in order to execute the

outstanding arrest warrants.

15.     When he was arrested on the outstanding warrants, Romero was encountered in

the Defendant Property and was in possession of a firearm, approximately 16 fentanyl pills, and

a large sum of United States Currency.  Carrying firearms and currency together with illegal

narcotics is common among drug traffickers.

16.     Romero is currently in custody on the pending state charges.  The Defendant

Property was towed and impounded by law enforcement officers at the time of Romero's arrest

and was subsequently seized by DEA on or about December 8, 2023 pursuant to a federal seizure

warrant issued by U.S. Magistrate Judge Laura Fashing on December 7, 2023.  The Defendant

Property will remain in law enforcement custody during the pendency of this action unless

otherwise ordered by the Court.

17.     Nathen Garley, a purported member of GHC and another person APD identified

as a shooter during the September 6, 2023 drive-by shooting, was arrested following a traffic

stop of a Dodge sedan in which he was a passenger.  The car was stopped on Interstate 40 in Cibola County, New Mexico and searched in a probable cause search.  During that search, a duffle bag with more than 10 kilograms of fentanyl pills was found in the trunk of the car.  An investigation into that incident, conducted by Homeland Security Investigations (HSI) discovered evidence that Nathan Garley had traveled to Phoenix, Arizona to pick up the fentanyl pills and was returning to Albuquerque to distribute them.

18.     Nathan Garley was charged via criminal complaint with Possession with Intent to Distribute 400 Grams and More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in Case No. 23-mj-1410-SCY.  A preliminary hearing was held on September 18, 2023, and U.S. Magistrate Judge Steven Yarbrough found that probable cause existed to believe that Nathan Garley committed the charged offense.

19.     As part of their investigation, HSI Agents secured a search warrant for the phone Nathan Garley was carrying at the time of his arrest.  Information retrieved from the phone indicated that Nathan Garley began using the phone on approximately September 7, 2023, after the above-described shooting, and that the phone contained a photograph showing that Romero was in Phoenix, Arizona with Nathan Garley after the shooting and in the days leading up to September 13 traffic stop.  Romero was not, however, in the car with Nathan Garley at the time of the traffic stop.

20.     On September 26, 2023, SA Emmett Fritz, gathered information from the New Mexico Department of Workforce Solutions (NMDWS) on Romero's work history and income over the last three to four years.  According to these records, in the first quarter of 2020 Romero worked at Walmart and had the gross wage of approximately $34.50.  Later in the first quarter of 2020, Romero worked at El Pinto restaurant earing approximately $3,610.08.  In the second quarter of 2020, Romero earned approximately $5,683.04 working at El Pinto.  In the third

quarter of 2020, Romero earned approximately $3,618.55 from the same employer.  In total in

the year of 2020, Romero earned approximately $12,946.17 of reported income.  In 2021, 2022,

and in 2023 year to date, NMDWS records indicate that Romero did not have any reported

income.

21.      On information and belief, including review of NMDWS records and surveillance

conducted by law enforcement, Romero is a drug trafficker and the primary source of Romero's

income from 2020 through September of 2023 has been the sale of illegal narcotics.

22.      MVD records regarding the ownership of the Defendant Property list an

individual owner as well as the financial institution Suntrust Bank.[1]  DEA Special Agent Emmett

Fritz contacted the individual listed as the registered owner of the Defendant Property and this

person indicated that he or she sold the vehicle in 2021 to an individual identified as Nick

Maurer, who was acting as a representative of a company identified as Maurer Inc., which is

located at 1945 16th Street, Corpus Christi, Texas.  Nick Maurer claimed to be brokering a

transaction for an individual who resided in Las Vegas, Nevada.  Maurer paid the registered

owner approximately $30,000 in United States Currency and paid off the remaining loan amount

to Suntrust bank/Truist Bank.

23.      After speaking with the individual listed as the registered owner of the Defendant

property, SA Fritz made several unsuccessful attempts to contact Nick Maurer on his cell phone

and the Maurer Inc. business phone.  SA Fritz also sent an administrative subpoena to Truist

Bank, formally known as Suntrust Bank, asking for lien information on the vehicle.  Truist

responded to the subpoena indicating that the account has been closed and that there was no

other account associated with the Defendant Property.

---

[1] Suntrust Bank became Truist Bank as the result of a merger in 2019.

24.     On information and belief, Nick Maurer brokered a vehicle purchase between the previous owner of the Defendant Property and Romero, and either Nick Maurer or Romero, or both, elected to keep the registration of the Defendant Property in the prior owner's name in order to disguise or conceal the nature, source, location, ownership, and control of proceeds of drug trafficking (i.e., the funds used to purchase the vehicle).  It is common for drug traffickers to seek to hold property in the names of other individuals (known as "nominees") in order to insulate that property from seizure and forfeiture and to avoid suspicion when owning expensive assets despite having little or no legitimate income.

## FIRST CLAIM FOR RELIEF

25.     The United States incorporates by reference the allegations in paragraphs 1 through 24 as though fully set forth herein.

26.     Title 21, United States Code, Section 881(a)(4) subjects to forfeiture "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9) [*i.e.*, controlled substances, listed chemicals and related property]."

27.     Defendant Property was used and/or intended to be used to transport or to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances or listed chemical in violation of the Controlled Substances Act.

## SECOND CLAIM FOR RELIEF

28.     The United States incorporates by reference the allegations in paragraphs 1 through 24 as though fully set forth herein.

29.     Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be

furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

30.     Defendant Property was furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act.

31.     Defendant Property constitutes proceeds traceable to an exchange of a controlled substance or listed chemical for moneys, negotiable instruments, securities, or other things of value in violation of the Controlled Substances Act.

### THIRD CLAIM FOR RELIEF

32.      The United States incorporates by reference the allegations in paragraphs 1 through 24 as though fully set forth herein.

33.     Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."

34.     Defendant Property was involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 and 1957 or is traceable to such property and is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A).

WHEREFORE, Plaintiff seeks arrest of Defendant Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown

Claimants to the Defendant Property, costs, and expenses of seizure and of this proceeding, and

other proper relief.

                                        Respectfully submitted,

                                        ALEXANDER M.M. UBALLEZ
                                        United States Attorney

                                        *Filed Electronically February 29, 2024*

                                        TAYLOR F. HARTSTEIN
                                        Assistant U.S. Attorney
                                        P.O. Box 607
                                        Albuquerque, NM 87103-0607
                                        (505) 346-7274

9

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the U.S. Drug Enforcement Administration (DEA) who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 2/29/2024

Special Agent Emmett Fritz
U.S. Drug Enforcement Administration